UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

-------------------------------------------------------- X

NANCY MILLER,

**FIRST AMENDED
COMPLAINT AND JURY
DEMAND**

Plaintiff

Civil Action No.: 8:10-cv-03190-PJM

vs.

BAYER HEALTHCARE PHARMACEUTICALS,
INC., BAYER SCHERING PHARMA AG, and
LEWIS TOWNSEND, M.D.

Defendants.

-------------------------------------------------------- X

Plaintiff, by her attorneys, **SAIONTZ & KIRK, P.A. and DOUGLAS & LONDON, P.C.,**
on behalf of herself individually, upon information and belief, at all times hereinafter mentioned,
alleges as follows:

## NATURE OF THE CASE

1.      This action is brought on behalf of Plaintiff, NANCY MILLER, who used the
combination oral contraceptive Yasmin and/or YAZ, also known generically as drospirenone and
ethinyl estradiol (hereinafter collectively referred to as "YAZ/Yasmin").

2.      Defendants, BAYER HEALTCHCARE PHARMACEUTICALS, INC., and BAYER
SCHERING PHARMA AG, (hereinafter collectively referred to as "Bayer Defendants") designed,
researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed
YAZ/Yasmin.

3.      When warning of safety and risks of YAZ/Yasmin, the Bayer Defendants negligently
and/or fraudulently represented to the medical and healthcare community, the Food and Drug

Administration (hereinafter referred to as "FDA"), to Plaintiff and the public in general, that YAZ/Yasmin had been tested and was found to be safe and/or effective for its indicated use.

4.  The Bayer Defendants concealed their knowledge of YAZ/Yasmin's defects, from Plaintiff, the Food and Drug Administration and the public in general.

5.  These representations were made by the Bayer Defendants with the intent of defrauding and deceiving Plaintiff, and the public in general, and were made with the intent of inducing the Plaintiff and the public in general to purchase YAZ/Yasmin for use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference to health, safety and welfare of the Plaintiff herein.

6.  The Bayer Defendants negligently and improperly failed to perform sufficient tests, if any, on women using YAZ/Yasmin during clinical trials, forcing Plaintiff, the public in general, and/or the FDA, to rely on safety information that applies to other oral birth control medications, which does not entirely and/or necessarily apply to the YAZ/Yasmin whatsoever.

7.  The Bayer Defendants were negligent in failing to adhere to and/or take into consideration warnings from the FDA, who determined that the Bayer Defendants were misleading the public in general through the use of advertisements which overstated the efficacy of YAZ/Yasmin and minimized the serious risks of the drug.

8.  As a result of the defective nature of YAZ/Yasmin, those persons who use and/or used and relied on YAZ/Yasmin have suffered and/or are at a greatly increased risk of serious and dangerous side effects including, including, _inter alia,_ heart arrhythmias, myocardial infarctions, and other adverse cardiovascular events, including, stroke, transient ischemic attack, blood clots, embolisms, and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use

any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

9.      Upon information and belief, Defendant LEWIS TOWNSEND, M.D. is a licensed health care provider, and holds himself to be a specialist in the fields of obstetrics and gynecology and who represents himself to be a specialist in the fields of female reproductive health, surgery and menopausal management.

10.     Upon information and belief, and at all times hereinafter mentioned, Defendant, LEWIS TOWNSEND, M.D., was under a duty and obligation to provide medical treatment, advice, and instruction to Plaintiff, NANCY MILLER, and other patients receiving treatment at his medical office.

11.     Upon information and belief, and at all times hereinafter mentioned, Defendant, LEWIS TOWNSEND, M.D. represented and warranted to Plaintiff, NANCY MILLER, that he/they was/were competent to perform all the requisite care and treatment regarding her condition, and/or the diagnostic tests that he/they was/were going to perform and/or failed to perform and that he/they possessed the necessary standard of learning, skill, care, knowledge and diligence of other physicians and/or health care providers.

12.     Upon information and belief, Plaintiff NANCY MILLER, visited Defendant LEWIS TOWNSEND, M.D., in approximately April 2007 for medical care, examination, diagnosis, treatment, and advice.

13.     During the aforesaid visits to Defendant LEWIS TOWNSEND, M.D., his/its/their agents, servants, and/or employees undertook and did render certain medical care, treatment, diagnostic testing, prescriptions and advice to Plaintiff, NANCY MILLER.

14.     During the aforesaid visits to Defendant LEWIS TOWNSEND, M.D., Plaintiff NANCY MILLER was wrongfully, negligently, and/or improperly advised, treated and cared for and was simultaneously prescribed YAZ/Yasmin.

15.     Plaintiff herein has sustained certain of the above health consequences due to her simultaneous use of YAZ/Yasmin.

16.     Consequently, Plaintiff seeks compensatory damages as a result of her use of the YAZ/Yasmin and the medical malpractice of Defendant, LEWIS TOWNSEND, M.D., which has caused and/or will continue to cause Plaintiff to suffer and/or be at greatly increased risk of serious and dangerous side effects including, inter alia, stroke, transient ischemic attack, blood clots, embolisms, and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, any and all life complications created by Plaintiff's inability to use any form of prescription contraception or estrogen-based hormone replacement therapy for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

## **PARTIES**

17.     Plaintiff, NANCY MILLER, is a citizen of the United States of America, and is a resident of the State of Maryland.

18.     Plaintiff, NANCY MILLER, was born on November 12, 1959.

19.     Plaintiff, NANCY MILLER, sought treatment from Defendant LEWIS TOWNSEND, M.D. from approximately 1997 up through May 2010, including visits in or about October, 2005 and April, 2007.

20.    Plaintiff, NANCY MILLER, first began using YAZ/Yasmin in approximately October, 2005, and used YAZ/Yasmin up through June 21, 2007.

21.    Plaintiff, NANCY MILLER, first began using Vivelle-Dot estrogen patch in approximately April 2007 and used the Vivelle-Dot estrogen patch up through June 21, 2007.

22.    On June 21, 2007, Plaintiff NANCY MILLER and was caused to sustain severe and permanent personal injuries, pain, suffering, and emotional distress, which included a left hemispheric embolic stroke.

23.    The injuries and damages sustained by Plaintiff, NANCY MILLER, were caused by use of the Bayer Defendants' YAZ/Yasmin and/or the medical malpractice of Defendants LEWIS TOWNSEND, M.D.

24.    Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is, and at all relevant times was, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of New Jersey.

25.    Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. was formerly known as Berlex Laboratories, Inc., which was formerly known as Berlex, Inc. and BAYER HEALTHCARE PHARMACEUTICALS, INC. is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

26.    Upon information and belief, at all relevant times Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. has transacted and conducted business in the State of Maryland.

27.    Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. expected or should have expected that its acts would have consequences within the United States of America, specifically in the State of Maryland.

28.   Upon   information   and   belief,   Defendant   BAYER   HEALTHCARE PHARMACEUTICALS, INC. is the holder of approved New Drug Application No. 21-676 for YAZ.

29.   Upon   information   and   belief,   Defendant   BAYER   HEALTHCARE PHARMACEUTICALS, INC. markets YAZ and Yasmin in the United States.

30.   Upon information and belief, Defendant BAYER SCHERING PHARMA AG is a pharmaceutical company domiciled in Germany.

31.   Defendant BAYER SCHERING PHARMA AG is formerly known as Schering AG and is the same corporate entity as Schering AG.

32.   Upon information and belief, Schering AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006.

33.   Upon information and belief, Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, Yasmin.

34.   Upon information and belief, Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YAZ.

35.   Defendant BAYER SCHERING PHARMA AG manufactures drospirenone and ethinyl estradiol, the progestin and estrogen contained in YAZ, Yasmin and Ocella.

36.   Upon information and belief, Defendant BAYER SCHERING PHARMA AG has transacted and conducted business in the State of Maryland.

37.   Upon information and belief, Defendant BAYER SCHERING PHARMA AG expected or should have expected that its acts would have consequences within the United States of America, specifically in the State of Maryland.

38.   Upon information and belief, and at all relevant times Defendant BAYER SCHERING PHARMA AG was in the business of and did design, research, manufacture, test,

advertise, promote, market, sell and distribute YAZ/Yasmin for use as a combination oral contraceptive.

39.     Upon information and belief, Defendant, LEWIS TOWNSEND, M.D., was and is a physician duly licensed to practice medicine in the State of Maryland, with his principal offices for the practice of medicine located at 10215 Fernwood Rd., Suite 250, Bethesda, Maryland, within the County of Montgomery.

40.     Upon information and belief, Defendant, LEWIS TOWNSEND, M.D., was and is a doctor specializing in the field of Gynecology.


**FACTUAL BACKGROUND**

41.     At all relevant times, the Bayer Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell, distribute, and/or have recently acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed YAZ/Yasmin for use as a combination oral contraceptive.

42.     Yasmin, the predecessor to YAZ, first received FDA approval in 2001 as a combination oral contraceptive.

43.     Each tablet of Yasmin is composed of a combination of 3 mg of the progestin, drospirenone, and 0.03 mg of the estrogen, ethinyl estradiol.

44.     YAZ received FDA approval in 2006 as a combination oral contraceptive.

45.     YAZ is almost identical to Yasmin, but each tablet of YAZ is composed of the combination of 3 mg of the progestin, drospirenone, and only 0.02 mg of the estrogen, ethinyl estradiol.

46.     YAZ and Yasmin are indicated for the prevention of pregnancy in women who use an oral contraceptive.

47.     Combination birth control pills are referred to as combined hormonal contraceptives.

48.     The primary difference between YAZ/Yasmin and other oral contraceptives on the market is that drospirenone has never been marketed in the United States and is unlike other progestins available in the United States.

49.     In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

50.     In February 2003, a paper entitled *Thromboembolism associated with the new contraceptive YAZ/Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of additional reports of thromboembolism where YAZ/Yasmin was suspected as the cause, including two deaths.

51.     Upon information and belief, Adverse Event data maintained by the FDA indicate staggering, serious Adverse Events, including, heart arrhythmias, electrolyte imbalance, hyponatremis, hyperkalemia, hyperkalemic arrhythmias, atrial fibrillation, tachycardia, bradycardia, myocardial infarctions, stroke, transient ischemic attack, blood clots, embolisms, and/or sudden death.

52.     Defendants have marketed their drug YAZ/Yasmin as effective for the treatment of premenstrual dysphoric disorder (hereinafter referred to as "PMDD"), premenstrual syndrome (hereinafter referred to as "PMS") and moderate acne, in addition to its FDA approved use as an oral contraceptive, and that it lacks certain side effects, such as weight gain, bloating and water retention, common to many other oral contraceptives.

53.     Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009, for misleading the public through use of television advertisements which overstate the efficiency of YAZ and/or Yasmin and minimize serious risks associated with the drug.

54.     The use of YAZ/Yasmin has a prothrombotic effect resulting in the development of thromboses, such as pulmonary emboli and deep vein thrombosis.

55.     Defendants ignored the correlation between the use of YAZ/Yasmin and the increased risk of developing thromboses, despite the wealth of scientific and medical evidence available.

56.     The use of drospirenone, a diuretic, in YAZ/Yasmin creates unique and dangerous risks compared to other oral contraception. These risks include, including inter alia heart arrhythmias, myocardial infarctions, and other adverse cardiovascular events, including sudden death, stroke, transient ischemic attack, embolisms, blood clots, kidney and/or gallbladder disease.

57.     Upon information and belief, drospirenone acts as a diuretic, where it goes into the kidney and blocks aldosterone, a hormone that increases the reabsorption of sodium and water and secretes potassium, causing dehydration.

58.     Upon information and belief, the use of drospirenone in YAZ/Yasmin and the blockage of aldosterone causes an imbalance in electrolytes by reducing sodium, a condition known as hyponatremis, and increasing potassium, a condition known as hyperkalemia, which may lead to serious and potentially fatal conditions known as hyperkalemia arrhythmia, myocardial infarctions, stroke, transient ischemic attacks, blood clots, embolisms, and/or sudden death.

59.     Upon information and belief, hyperkalemia arrhythmias are also associated with blood clots and/or thrombotic events such as a stroke, deep vein thrombosis, pulmonary embolism or heart attack.

60.     Upon information and belief, the use of drospirenone in YAZ/Yasmin is also known to cause gallbladder disease, which could require surgical intervention.

61.     Upon information and belief, drospirenone has also been known to cause kidney stone formation, which may also cause further kidney disease and require surgery.

62.     Upon information and belief, in October 2005, Defendant LEWIS TOWNSEND, M.D. and/or their agents, servants, partners, and/or employees, prescribed Plaintiff NANCY MILLER the YAZ/Yasmin birth control pill.

63.     Upon information and belief, in April 2007, Defendant LEWIS TOWNSEND, M.D., and/or their agents, servants, partners, and/or employees, prescribed Plaintiff NANCY MILLER the Vivelle-Dot estrogen patch, in conjunction with the YAZ/Yasmin birth control pill, despite the increased risk of developing myocardial infarction, stroke, invasive breast cancer, pulmonary emboli and/or deep vein thrombosis.

64.     By reason of the foregoing, Plaintiff developed a left hemispheric embolic stroke, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, any and all life complications created by Plaintiff's inability to use any form of prescription contraception or estrogen-based hormone replacement therapies for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

65.     Plaintiff has endured and continues to suffer the mental anguish and psychological trauma of living with the knowledge that she suffers serious and dangerous side effects and may be at greater risk of suffering serious side effects including, inter alia, left hemispheric embolic stroke, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, any and all life complications created by Plaintiff's inability to use any form of prescription contraception or estrogen-based hormone replacement therapies for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

66.     By reason of the foregoing, Plaintiff has been severely and permanently injured, and will require more constant and continuous medical monitoring and treatment than prior to her use of the Bayer Defendants' YAZ/Yasmin drug, which was prescribed by Defendant LEWIS TOWNSEND, M.D..

**FIRST CAUSE OF ACTION**
**AS AGAINST DEFENDANTS**
**(NEGLIGENCE)**

67.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

68.     The Bayer had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of YAZ/Yasmin into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

69.     The Bayer failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of YAZ/Yasmin into interstate commerce in that Bayer Defendants knew or should have known that using YAZ/Yasmin created a high risk of unreasonable, dangerous side effects, including, inter alia, heart arrhythmias, myocardial infarctions, and other adverse cardiovascular events, including, stroke, transient ischemic attack, blood clots, embolisms, kidney and gallbladder disease and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception and/or estrogen-based hormone replacement

therapies for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

70.   The negligence of the Bayer Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

(a)   Manufacturing, producing, promoting, formulating, creating, and/or designing YAZ/Yasmin without thoroughly testing it;

(b)   Manufacturing, producing, promoting, formulating, creating, and/or designing YAZ/Yasmin without adequately testing it;

(c)   Not conducting sufficient testing programs to determine whether or not YAZ/Yasmin was safe for use; in that the Bayer Defendants herein knew or should have known that YAZ/Yasmin was unsafe and unfit for use by reason of the dangers to its users;

(d)   Selling YAZ/Yasmin without making proper and sufficient tests to determine the dangers to its users;

(e)   Negligently failing to adequately and correctly warn the Plaintiff, the public and the FDA of the dangers of YAZ/Yasmin;

(f)   Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, YAZ/Yasmin;

(g)   Failing to test YAZ/Yasmin and/or failing to adequately, sufficiently and properly test YAZ/Yasmin;

(h)   Negligently advertising and recommending the use of YAZ/Yasmin without sufficient knowledge as to its dangerous propensities;

(i)   Negligently representing that YAZ/Yasmin was safe for use for its intended purpose, when, in fact, it was unsafe;

(j)   Negligently representing that YAZ/Yasmin had equivalent safety and efficacy as other forms of birth control/contraception;

(k)   Negligently designing YAZ/Yasmin in a manner which was dangerous to its users;

(l)   Negligently manufacturing YAZ/Yasmin in a manner which was dangerous to its users;

(m)    Negligently producing YAZ/Yasmin in a manner which was dangerous to its users;

(n)    Negligently assembling YAZ/Yasmin in a manner which was dangerous to its users;

(o)    Concealing information concerning FDA warnings from the Plaintiff in knowing that YAZ/Yasmin was unsafe, dangerous, and/or non-conforming with FDA regulations;

(p)    Improperly concealing and/or misrepresenting information from the Plaintiff and/or the FDA, concerning the severity of risks and dangers of YAZ/Yasmin compared to other forms of contraception.

71.    The Bayer Defendants under-reported, underestimated and downplayed the serious dangers of YAZ/Yasmin.

72.    The Bayer Defendants negligently compared the safety risk and/or dangers of YAZ/Yasmin with other forms of contraception, including but not limited to other combination oral contraceptives.

73.    The Bayer Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of YAZ/Yasmin in that they:

(a)    Failed to use due care in designing and manufacturing YAZ/Yasmin so as to avoid the aforementioned risks to individuals when YAZ/Yasmin was used for contraceptive purposes and/or hormone therapy;

(b)    Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of YAZ/Yasmin;

(c)    Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of YAZ/Yasmin;

(d)    Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning YAZ/Yasmin;

(e)     Failed to warn Plaintiff of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

(b)     Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of YAZ/Yasmin;

(g)     Failed to warn Plaintiff, prior to actively encouraging the sale of YAZ/Yasmin, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of  potentially serious side effects;

(h)     Were otherwise careless and/or negligent.

74.     Despite the fact that the Bayer Defendants knew or should have known that YAZ/Yasmin caused unreasonably dangerous side effects, the Bayer Defendants continued and continue to market, manufacture, distribute and/or sell YAZ/Yasmin to consumers, including the Plaintiff.

75.     The Bayer Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of the Bayer Defendants' failure to exercise ordinary care, as set forth above.

76.     That Defendants LEWIS TOWNSEND, M.D. and/or their agents, servants, partners, and/or employees, rendered professional medical services including but not limited to the time period between October 2005 and June 21, 2007; further said Defendants failed to exercise ordinary care and medical skill in keeping with his/their profession and the areas of his/their profession in which he specialized and in the manner in which he diagnosed, cared, treated and rendered medical services to Plaintiff NANCY MILLER.

77.     Defendants' negligence was the proximate cause of Plaintiff's injuries, harm and economic loss which she suffered and/or will continue to suffer.

78.    As a result of the foregoing acts and omissions, Plaintiff developed a left hemispheric embolic stroke, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, any and all life complications created by Plaintiff's inability to use any form of prescription contraception or estrogen-based hormone replacement therapies for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

79.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

80.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).


## SECOND CAUSE OF ACTION
## AS AGAINST THE BAYER DEFENDANTS
## (STRICT PRODUCTS LIABILITY)

81.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

82.    At all times herein mentioned, the Bayer Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the Bayer Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed YAZ/Yasmin as hereinabove described that was used by the Plaintiff.

83.     That YAZ/Yasmin was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Bayer Defendants.

84.     At those times, YAZ/Yasmin was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, the Plaintiff herein.

85.     The YAZ/Yasmin, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by the Bayer Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of YAZ/Yasmin.

86.     The YAZ/Yasmin, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by the Bayer Defendants was defective in design and/or formulation, in that, when it left the hands of the Bayer Defendants manufacturers and/or suppliers, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer would expect.

87.     At all times herein mentioned, YAZ/Yasmin in a defective condition and unsafe, and the Bayer Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Bayer Defendants.

88.     The Bayer Defendants knew, or should have known that at all times herein mentioned its YAZ/Yasmin was in a defective condition, and was and is inherently dangerous and unsafe.

89.     At the time of the Plaintiff's use of YAZ/Yasmin, YAZ/Yasmin was being used for the purposes and in a manner normally intended, namely for birth control and/or regulation of menses.

90.     The Bayer Defendants with this knowledge voluntarily designed its YAZ/Yasmin in a dangerous condition for use by the public, and in particular the Plaintiff.

91.    The Bayer Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

92.    The Bayer Defendants created a product unreasonably dangerous for its normal, intended use.

93.    The YAZ/Yasmin designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Bayer Defendants was manufactured defectively in that YAZ/Yasmin left the hands of the Bayer Defendants in a defective condition and was unreasonably dangerous to its intended users.

94.    The YAZ/Yasmin, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by the Bayer Defendants reached their intended users in the same defective and unreasonably dangerous condition in which the Bayer Defendants' YAZ/Yasmin was manufactured.

95.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Plaintiff in particular, and Defendants are therefore strictly liable for the injuries sustained by the Plaintiff.

96.    The Plaintiff could not by the exercise of reasonable care, have discovered YAZ/Yasmin's defects herein mentioned and perceived its danger.

97.    The YAZ/Yasmin, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by the Bayer Defendants was defective due to inadequate warnings or instructions as the Bayer Defendants knew or should have known that the product created a risk of serious and dangerous side effects including, inter alia, left hemispheric embolic stroke, as well as other severe and personal injuries which are permanent and lasting in nature and the Defendants failed to adequately warn of said risk.

98.    The YAZ/Yasmin, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by the Bayer Defendants was defective due to inadequate warnings and/or inadequate testing.

99.    The YAZ/Yasmin, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Bayer Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after the Bayer Defendants knew or should have known of the risks of serious side effects including, inter alia, left hemispheric embolic stroke, as well as other severe and permanent health consequences from YAZ/Yasmin, they failed to provide adequate warnings to users or consumers of the product, and continued to improperly advertise, market and/or promote their product, YAZ/Yasmin.

100.    By reason of the foregoing, the Bayer Defendants have become strictly liable in tort to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, YAZ/Yasmin.

101.    The Bayer Defendants' defective design, manufacturing defect, and inadequate warnings of YAZ/Yasmin were acts that amount to willful, wanton, and/or reckless conduct by Bayer Defendants.

102.    That said defects in the Bayer Defendants' drug YAZ/Yasmin were a substantial factor in causing Plaintiff's injuries.

103.    As a result of the foregoing acts and omissions, the Plaintiff was and still is caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including, inter alia, left hemispheric embolic stroke, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, any and all life complications created by Plaintiff's inability to use any form of prescription contraception or estrogen-based hormone therapy for the duration of her life, as well as the need for

lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

104.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

105.   By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### THIRD CAUSE OF ACTION
### AS AGAINST THE BAYER DEFENDANTS
### (BREACH OF EXPRESS WARRANTY)

106.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

107.   The Bayer Defendants expressly warranted that YAZ/Yasmin was safe and well accepted by users.

108.   YAZ/Yasmin does not conform to these express representations because YAZ/Yasmin is not safe and has numerous serious side effects, many of which were not accurately warned about by the Bayer Defendants.   As a direct and proximate result of the breach of said warranties, Plaintiff suffered and/or will continue to suffer severe and permanent personal injuries, harm and economic loss.

109.   Plaintiff did rely on the express warranties of the Bayer Defendants herein.

110.   Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Bayer Defendants for use of YAZ/Yasmin in recommending, prescribing, and/or dispensing YAZ/Yasmin.

111.   The Bayer Defendants herein breached the aforesaid express warranties, as their drug YAZ/Yasmin was defective.

112.   The Bayer Defendants expressly represented to Plaintiff and/or the FDA that YAZ/Yasmin was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of combination oral contraceptives, that the side effects it did produce were accurately reflected in the warnings and that it was adequately tested and fit for its intended use.

113.   The Bayer Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that YAZ/Yasmin was not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by the Bayer Defendants.

114.   As a result of the foregoing acts and omissions, Plaintiff developed a left hemispheric embolic stroke, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, any and all life complications created by Plaintiff's inability to use any form of prescription contraception or estrogen-based hormone replacement therapies for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

115.   By reason of the foregoing, Plaintiff has been severely and permanently injured, and will require more constant and continuous medical monitoring and treatment than prior to her use of the Bayer Defendants' YAZ/Yasmin drug and Defendant LEWIS TOWNSEND, M.D.'s care.

116.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.

Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

117.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).


## FOURTH CAUSE OF ACTION
## AS AGAINST THE BAYER DEFENDANTS
## (BREACH OF IMPLIED WARRANTIES)

118.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

119.    At all times herein mentioned, the Bayer Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold YAZ/Yasmin and/or have recently acquired the Defendants who have manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold YAZ/Yasmin.

120.    At the time the Bayer Defendants marketed, sold, and distributed YAZ/Yasmin for use by Plaintiff, the Bayer Defendants knew of the use for which YAZ/Yasmin was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

121.    The Bayer Defendants impliedly represented and warranted to the users of YAZ/Yasmin and/or the FDA that YAZ/Yasmin was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

122.    That said representations and warranties aforementioned were false, misleading, and inaccurate in that YAZ/Yasmin was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

123.   Plaintiff did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

124.   Plaintiff reasonably relied upon the skill and judgment of the Bayer Defendants as to whether YAZ/Yasmin was of merchantable quality and safe and fit for its intended use.

125.   YAZ/Yasmin was injected into the stream of commerce by the Bayer Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

126.   The Bayer Defendants herein breached the aforesaid implied warranties, as their drugs YAZ/Yasmin were not fit for its intended purposes and uses.

127.   As a result of the foregoing acts and omissions, Plaintiff developed a left hemispheric embolic stroke, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, any and all life complications created by Plaintiff's inability to use any form of prescription contraception or estrogen-based hormone replacement therapies for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

128.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

129.   By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## FIFTH CAUSE OF ACTION AS
## AGAINST THE BAYER DEFENDANTS
## (FRAUDULENT MISREPRESENTATION)

130.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

131.    The Bayer Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiff, and/or the FDA, and the public in general, that said product, YAZ/Yasmin, had been tested and was found to be safe and/or effective for contraceptive purposes.

132.    That representations made by the Bayer Defendants were, in fact, false.

133.    When said representations were made by the Bayer Defendants, they knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

134.    These representations were made by the Bayer Defendants with the intent of defrauding and deceiving the Plaintiff and the public in general, and were made with the intent of inducing the public in general, to recommend and/or purchase said product, YAZ/Yasmin, for use as a means of birth control, which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff herein.

135.    At the time the aforesaid representations were made by the Bayer Defendants and, at the time the Plaintiff used YAZ/Yasmin, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

136.    In reliance upon said representations, the Plaintiff was induced to and did use YAZ/Yasmin, thereby sustaining severe and permanent personal injuries, and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

137.    The Bayer Defendants knew and were aware or should have been aware that YAZ/Yasmin had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

138.    The Bayer Defendants knew or should have known that YAZ/Yasmin had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

139.    The Bayer Defendants brought YAZ/Yasmin to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiff.

140.    As a result of the foregoing acts and omissions, Plaintiff developed a left hemispheric embolic stroke, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, any and all life complications created by Plaintiff's inability to use any form of prescription contraception or estrogen-based hormone replacement therapies for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

141.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

142.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### SIXTH CAUSE OF ACTION AS
### AGAINST THE BAYER DEFENDANTS
### (FRAUDULENT CONCEALMENT)

143.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

144.    At all times during the course of dealing between the Bayer Defendants and Plaintiff and/or the FDA, the Bayer Defendants misrepresented the safety of YAZ/Yasmin for its intended use.

145.    At all times during the course of dealing between the Bayer Defendants and Plaintiff, and/or the FDA, Defendants misrepresented the levels of estrogen delivered by YAZ/Yasmin.

146.    The Bayer Defendants knew or were reckless in not knowing that its representations were false.

147.    In representations to Plaintiff and/or the FDA, the Bayer Defendants fraudulently concealed and intentionally omitted the following material information:

      (a)     that YAZ/Yasmin was not as safe as other forms of contraception;

      (b)     that the risks of adverse events with YAZ/Yasmin were higher than those with other forms of birth control, including but not limited to other forms of oral contraception;

      (c)     that the risks of adverse events with YAZ/Yasmin were not adequately tested and/or known by the Bayer Defendants;

      (d)     that the Bayer Defendants were aware of dangers in YAZ/Yasmin, in addition to and above and beyond those associated with other forms of oral birth control methods;

      (e)     that YAZ/Yasmin was defective, and that it caused dangerous side effects, including but not limited to higher incidence of stroke, transient ischemic attack ("TIA"), embolisms, blood clots, heart attacks, coma, and death, as well as other severe and permanent health consequences, in a much more and significant rate than other forms of birth control, including but not limited to oral birth control;

(f)    that patients needed to be monitored more regularly than normal while using YAZ/Yasmin;

(g)    that YAZ/Yasmin was manufactured negligently;

(h)    that YAZ/Yasmin was manufactured defectively;

(i)    that YAZ/Yasmin was manufactured improperly;

(j)    that YAZ/Yasmin was designed negligently;

(k)    that YAZ/Yasmin was designed defectively; and

(l)    that YAZ/Yasmin was designed improperly.

148.    The Bayer Defendants were under a duty to disclose to Plaintiff, and and/or the FDA the defective nature of YAZ/Yasmin, including but not limited to the heightened risks of an adverse cardiovascular event, such as a heart arrhythmia, myocardial infarctions or sudden death.

149.    The Bayer Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used YAZ/Yasmin, including the Plaintiff, in particular.

150.    The Bayer Defendants' concealment and omissions of material facts concerning, inter alia, the safety of YAZ/Yasmin was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff into reliance, continued use of YAZ/Yasmin, and actions thereon, and to cause them to purchase, prescribe, and/or dispense YAZ/Yasmin and/or use the products.

151.    The Bayer Defendants knew that Plaintiff, and/or the FDA had no way to determine the truth behind the Bayer Defendants' concealment and omissions, and that these included material omissions of facts surrounding YAZ/Yasmin, as set forth herein.

152.    Plaintiff reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by the Bayer Defendants.

153.    As a result of the foregoing acts and omissions, Plaintiff developed a left hemispheric embolic stroke, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, any and all life complications created by Plaintiff's inability to use any form of prescription contraception or estrogen-based hormone replacement therapies for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

154.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

155.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### SEVENTH CAUSE OF ACTION AS AGAINST THE BAYER DEFENDANTS (NEGLIGENT MISREPRESENTATION)

156.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

157.    The Bayer Defendants had a duty to represent to the medical and healthcare community, and to the Plaintiff, the FDA and the public in general that said product, YAZ/Yasmin, had been tested and found to be safe and effective for birth control.

158.    The representations made by the Bayer Defendants were, in fact, false.

159.    The Bayer Defendants failed to exercise ordinary care in the representation of YAZ/Yasmin, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce in that the Bayer Defendants negligently misrepresented YAZ/Yasmin's high risk of unreasonable, dangerous side effects.

160.    The Bayer Defendants breached their duty in representing YAZ/Yasmin's serious side effects to the medical and healthcare community, to the Plaintiff, the FDA and the public in general.

161.    As a result of the foregoing acts and omissions, Plaintiff developed a left hemispheric embolic stroke, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, any and all life complications created by Plaintiff's inability to use any form of prescription contraception or estrogen-based hormone replacement therapies for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

162.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

163.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## EIGHTH CAUSE OF ACTION AS
## AGAINST THE BAYER DEFENDANTS
## (FRAUD AND DECEIT)

164.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

165.    The Bayer Defendants conducted research and used YAZ/Yasmin as part of their research.

166.    As a result of the Bayer Defendants' research and testing, or lack thereof, the Bayer Defendants blatantly and intentionally distributed false information, including but not limited to assuring the public, the Plaintiff and/or the FDA that YAZ/Yasmin was safe and effective for its intended use.

167.    As a result of the Bayer Defendants' research and testing, or lack thereof, the Bayer Defendants intentionally omitted certain results of testing and research to the public, healthcare professionals, and/or the FDA, including the Plaintiff.

168.    The Bayer Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiff and/or the FDA.

169.    The information distributed to the public, the FDA, and the Plaintiff by the Bayer Defendants, including but not limited to reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media contained material representations of fact and/or omissions.

170.    The information distributed to the public, the FDA, and the Plaintiff by the Bayer Defendants intentionally included representations that the Bayer Defendants' drug YAZ/Yasmin was safe and effective for use as a form of birth control.

171.    The information distributed to the public, the FDA, and the Plaintiff, by the Bayer Defendants intentionally included representations that the Bayer Defendants' drug YAZ/Yasmin carried the same risks, hazards, and/or dangers as other forms of combination oral birth contraception.

172.    The information distributed to the public, the FDA, and the Plaintiff, by the Bayer Defendants intentionally included representations that the Bayer Defendants' drug YAZ/Yasmin was more effective in treating the symptoms of premenstrual dysphoric disorder and moderate acne than other forms of combination oral contraceptives, encouraging the use of YAZ/Yasmin in circumstances other than those in which the drug has been approved, over-promises the benefits and minimizes the risk associated with YAZ/Yasmin.

173.    The information distributed to the public, the FDA, and the Plaintiff, by the Bayer Defendants intentionally included false representations that YAZ/Yasmin were not injurious to the health and/or safety of its intended users.

174.    The information distributed to the public, the FDA, and the Plaintiff, by the Bayer Defendants intentionally included false representations that YAZ/Yasmin was as potentially injurious to the health and/or safety of its intended as other forms of oral forms combination oral contraceptives.

175.    These representations were all false and misleading.

176.    Upon information and belief, the Bayer Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Bayer Defendants, and results that demonstrated that YAZ/Yasmin was not safe as a means of contraception and/or was not as safe as other means of contraction, including but not limited to other forms of combination oral contraceptives.

177.    The Bayer Defendants intentionally made material representations to the FDA and the public, including the medical profession, and the Plaintiff, regarding the safety of YAZ/Yasmin,

specifically but not limited to YAZ/Yasmin not having dangerous and serious health and/or safety concerns.

178.   The Bayer Defendants intentionally made material representations to the FDA, the public in general and specifically the Plaintiff, regarding the safety of YAZ/Yasmin, specifically but not limited to YAZ/Yasmin being as safe a means of birth control as other forms of combination oral contraception.

179.   That it was the purpose of the Bayer Defendants in making these representations to deceive and defraud the public, the FDA, and/or the Plaintiff, to gain the confidence of the public, the FDA, and/or the Plaintiff, to falsely ensure the quality and fitness for use of YAZ/Yasmin and induce the public, and/or the Plaintiff to purchase, request, recommend, and/or continue to use YAZ/Yasmin.

180.   The Bayer Defendants made the aforementioned false claims and false representations with the intent of convincing the public, the FDA, and/or the Plaintiff that YAZ/Yasmin were fit and safe for use as birth control.

181.   The Bayer Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that YAZ/Yasmin were fit and safe for use as birth control and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other similar medications.

182.   That the Bayer Defendants made claims and representations in its documents submitted to the FDA, to the public, and the Plaintiff that YAZ/Yasmin did not present serious health and/or safety risks.

183.   That the Bayer Defendants made claims and representations in its documents submitted to the FDA, to the public, and the Plaintiff that YAZ/Yasmin did not present health and/or safety risks greater than other oral forms of contraception.

184.   That these representations and others made by the Bayer Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

185.   That these representations and others, made by the Bayer Defendants, were made with the intention of deceiving and defrauding the Plaintiff and/or the FDA, and were made in order to induce the Plaintiff to rely upon misrepresentations and caused the Plaintiff to purchase, use, rely on, request, and/or recommend YAZ/Yasmin.

186.   That the Bayer Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of YAZ/Yasmin to the public at large, the Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives.

187.   That the Bayer Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of YAZ/Yasmin by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of YAZ/Yasmin.

188.   That the Bayer Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiff into a sense of security so that Plaintiff would rely on the representations and purchase, use and rely on YAZ/Yasmin.

189.   The Bayer Defendants, through their public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Plaintiff would rely upon the information being disseminated.

190.   The Bayer Defendants utilized direct to consumer adverting to market, promote, and/or advertise YAZ/Yasmin.

191.   That the Plaintiff and/or her respective healthcare professionals did in fact rely on and believe the Bayer Defendants' representations to be true at the time they were made and relied upon the representations as well as the superior knowledge of their medications and were thereby induced to purchase, use and rely on YAZ/Yasmin.

192.   That at the time the representations were made, the Plaintiff did not know the truth with regard to the dangerous and serious health and/or safety concerns of YAZ/Yasmin.

193.   That the Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of the Bayer Defendants nor could the Plaintiff with reasonable diligence have discovered the true facts.

194.   That had the Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of YAZ/Yasmin, Plaintiff would not have purchased, used and/or relied on YAZ/Yasmin.

195.   That the Bayer Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiff.

196.   As a result of the foregoing acts and omissions, Plaintiff developed a left hemispheric embolic stroke, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, any and all life complications created by Plaintiff's inability to use any form of prescription contraception or estrogen-based hormone replacement therapies for the duration of her life, as well as the need for

lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

197.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

198.   By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### NINTH CAUSE OF ACTION AS AGAINST THE BAYER DEFENDANTS (VIOLATION OF THE MARYLAND CONSUMER PROTECTION LAW)

199.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

200.   At all times relevant, the Maryland Consumer Protection Act, MD. CODE ANN., COM. LAW II §§ 13-303 (Repl. Vol. 1990), (hereinafter "MCPA") prohibits the engaging of any "unfair or deceptive trade practice in the rental or sale of consumer realty… regardless of whether or not a consumer is in fact deceived or damaged as a result" and declares such acts or practices as unlawful.

201.   The Bayer Defendants violated the MCPA by the use of false and misleading misrepresentations or omissions of material fact in connection with the marketing, promotion, and sale of YAZ/Yasmin.  The Bayer Defendants communicated the purported benefits of YAZ/Yasmin while failing to disclose the serious and dangerous side effects related to the use of YAZ/Yasmin

with the intent that consumers, like Plaintiff, rely upon the omissions and misrepresentations and purchase YAZ/Yasmin, respectively.

202.    As a result of violating the MCPA, the Bayer Defendants caused Plaintiff to be prescribed and to use YAZ/Yasmin, causing severe injuries and damages as previously described herein.

203.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## TENTH CAUSE OF ACTION AS AGAINST DEFENDANTS
### LEWIS TOWNSEND
### (NEGLIGENCE - MEDICAL MALPRACTICE)

204.    Defendant LEWIS TOWNSEND, M.D., held himself out to the public as a health care provider specializing in obstetrics and gynecology; possessing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine.

205.    That Defendant LEWIS TOWNSEND, M.D., rendered professional medical services including but not limited to the time period between 1997 and June 21, 2007; further said Defendants failed to exercise ordinary care and medical skill in keeping with his profession and the areas of his profession in which he specialized and in the manner in which he diagnosed, cared, treated and rendered medical services to Plaintiff, NANCY MILLER.

206.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services. Plaintiff, NANCY MILLER, is informed and believes that Defendant LEWIS TOWNSEND, M.D., was negligent, careless,

wanton, willful, reckless and/or grossly negligent including, but not limited to one of the following ways:

    a.    Defendant, LEWIS TOWNSEND, M.D., individually and/or acting within the course and scope of his agency and employment, simultaneously prescribed Yasmin and Vivelle-Dot to Plaintiff, NANCY MILLER, with full knowledge of her medical history, contrary to the generally accepted standards of medicine.

    b.    Defendant, LEWIS TOWNSEND, M.D., treated and/or advised Plaintiff, NANCY MILLER, contrary to generally accepted standards of medicine;

    c.    Defendant, LEWIS TOWNSEND, M.D., individually and/or acting within the course and scope of his agency and employment, diagnosed and/or failed to diagnose and/or failed to treat and/or care for Plaintiff, NANCY MILLER, contrary to the generally accepted standards of medicine;

    d.    Defendant, LEWIS TOWNSEND, M.D., individually and/or acting within the course and scope of his agency and employment, conducted inappropriate and/or improper diagnostic tests and/or failed to conduct appropriate diagnostic tests on Plaintiff, NANCY MILLER, contrary to the generally accepted standards of medicine;

    e.    Defendant, LEWIS TOWNSEND, M.D., individually and/or acting within the course and scope of his agency and employment, failed to follow up with, monitor, treat and/or diagnose Plaintiff, NANCY MILLER, contrary to the generally accepted standards of medicine;

    207.    That during the care and treatment with Defendant, LEWIS TOWNSEND, M.D., prescribed Plaintiff, NANCY MILLER, YAZ/Yasmin as a contraceptive and for the off-label use of hormone replacement therapy.

    208.    That during the care and treatment with Defendant, LEWIS TOWNSEND, M.D., simultaneously prescribed Plaintiff, NANCY MILLER, Vivelle-Dot transdermal estradiol system for treatment of symptoms of menopause.

    209.    During this care and treatment with Defendant LEWIS TOWNSEND, M.D. undertook and did render certain medical care, treatment, diagnostic testing and advice to Plaintiffs, NANCY MILLER, all of whom were acting within the course and scope of their employment with Defendants and who were otherwise negligent in the care and treatment rendered to Plaintiff, NANCY MILLER.

210.    Upon information and belief, and at all times hereinafter mentioned, Defendant, LEWIS TOWNSEND, M.D., wrongfully, carelessly, negligently, and/or improperly failed to follow up with and monitor the treatment, condition, and care of Plaintiff, NANCY MILLER.

211.    During the aforesaid visits care and treatment, Defendant, LEWIS TOWNSEND, M.D., was negligent in the rendering of the aforesaid medical care and treatment, and/or failed to render to Plaintiff, NANCY MILLER, and Defendant deviated from standard and accepted medical practices and procedures.

212.    Defendant, LEWIS TOWNSEND, M.D.'s, negligence was the proximate cause of Plaintiff's injuries, harm and economic loss which she suffered and/or will continue to suffer.

213.    As a direct and proximate result of the foregoing negligence and medical malpractice of Defendant, LEWIS TOWNSEND, M.D., Plaintiff, NANCY MILLER, sustained serious and permanent personal injuries, including inter alia, stroke, and all of its resulting sequella and has been caused to suffer severe physical pain and mental anguish as a result thereof, including diminished enjoyment of life, any and all life complications created by Plaintiff's inability to use any form of prescription contraception or estrogen-based hormone replacement therapies for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, rehabilitation and fear of developing any of the above named health consequences, medical expenses, and/or other serious injuries, which are permanent and lasting in nature, and that Plaintiff has been incapacitated from her regular activities, including but not limited to social and economic activities for which claim is made.

252.    Plaintiff demands damages as compensation for all injuries and losses, past, present and future, which she has sustained, is sustaining, or will sustain in the future, all of which were caused by the negligence of Defendant, without any negligence by Plaintiff.

253.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in

the sum of TEN MILLION DOLLARS ($10,000,000.00).

## ELEVENTH CAUSE OF ACTION AS AGAINST THE DEFENDANT, LEWIS TOWNSEND, M.D. (LACK OF INFORMED CONSENT)

263. Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

264. There were certain risks, hazards, dangers and alternatives to the aforesaid medical care and treatment rendered to Plaintiff or lack thereof.

265. The Plaintiff, NANCY MILLER, had no knowledge of the risks, hazards, dangers or alternatives to the aforesaid medical care and treatment or lack thereof.

266. The Plaintiff, NANCY MILLER, had the right to know of the aforesaid risks, hazards, dangers and alternatives.

267. The Defendant, LEWIS TOWNSEND, M.D. had a duty to warn the Plaintiff, NANCY MILLER, of the risks, hazards, dangers and alternatives to that portion of the aforesaid medical care and treatment rendered by the Defendants, their agents, servants or employees.

268. The Defendant, LEWIS TOWNSEND, M.D., failed to warn or advise the Plaintiff, NANCY MILLER, of the aforesaid risks, hazards, dangers and alternatives to the aforesaid medical care and treatment or lack thereof.

269. The Defendant, LEWIS TOWNSEND, M.D., failed to obtain the informed consent of the Plaintiff, NANCY MILLER, to the aforesaid medical care and treatment or lack thereof.

270. Had the Plaintiff NANCY MILLER, or any reasonable person, been informed of the aforesaid, she would not have consented to the aforesaid medical care and treatment or lack thereof.

271. As a direct and proximate result of the foregoing negligence and medical malpractice of Defendant, LEWIS TOWNSEND, M.D., the Plaintiff, NANCY MILLER, sustained serious and

permanent personal injuries and has been caused to suffer severe physical pain and mental anguish as a result thereof, and that Plaintiff has been incapacitated from her regular activities, including but not limited to social and economic activities.

272.    By reason of the foregoing, the Plaintiff, NANCY MILLER, is entitled to recover all of her damages from the Defendants, LEWIS TOWNSEND, M.D., the amount of which exceeds the jurisdictional limits of all lower Courts.

273.    As a result of the foregoing acts and omissions, the Plaintiff requires and will require health care and services, and did incur medical, health, incidental and related expenses.  Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

274.    As a result Plaintiffs, have been damaged in the sum of TEN MILLION DOLLARS ($10,000,000.00), not including punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.    For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue.

2.    Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

3.    Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

4.    Awarding all applicable statutory damages of the state whose laws will govern this action;

5.    Awarding Plaintiff reasonable attorneys' fees;

6.    Awarding Plaintiff the costs of these proceedings; and

7.    Such other and further relief as this Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.


Dated: November 30, 2010


RESPECTFULLY SUBMITTED,


By:___/s/ Austin P. Kirk_____
AUSTIN P. KIRK
Saiontz & Kirk, P.A.
3 South Frederick Street, Suite 900
Baltimore, Maryland 21202
Direct Dial: (410) 223-3211
Direct Fax: (410) 223-3213
Email: akirk@saiontzkirk.com
Attorney for Plaintiff

-and-

MICHAEL A. LONDON (ML-7510)
Douglas & London, P.C.
111 John Street, Suite 1400
New York, New York 10038
Ph:  (212) 566-7500
Fax:  (212) 566-7501
Email: mlondon@douglasandlondon.com
Attorney for Plaintiff